UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 10-CR-0276 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| STEVON WARREN, | |
| Defendant. | |

LeeAnn K. Bell, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Andrea K. George and Caroline Durham, OFFICE OF THE FEDERAL DEFENDER, for defendant.

A jury convicted defendant Stevon Warren of interstate transportation to engage in prostitution (Count One) and sex trafficking of a minor (Count Two). This matter is before the Court on Warren's motion, pursuant to Fed. R. Crim. P. 29(c), for acquittal on Count Two. For the reasons set forth below, the motion is denied.

Under Fed. R. Crim. P. 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a Rule 29 motion for acquittal, the court must view the evidence in the light most favorable to the government, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences drawn from the evidence that support the jury's verdict. *United States v. Cook*, 603 F.3d 434, 437 (8th Cir. 2010). The motion should be granted only if no reasonable jury could have found the defendant guilty. *Id.*

In order to convict Warren of sex trafficking of a minor, the jury had to find that Warren knowingly recruited, enticed, harbored, transported, or obtained a minor, knowing that the minor

would be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a)(1); *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009). Warren first argues that it is not enough for him to have known that C.D. (the minor whom he was convicted of trafficking) intended to perform a commercial sex act. Instead, says Warren, the government must prove that something external caused or compelled C.D. to engage in a commercial sex act and that Warren knew of this external cause. Warren is mistaken:

> Elbert repeatedly argues evidence of the victims' prior acts of prostitution demonstrates he did not cause them to engage in commercial sex acts. This argument relies upon an improper construction of the phrase "caused to engage." 18 U.S.C. § 1591(a). Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims. *Id.* Instead, the government was only required to prove Elbert knowingly recruited, enticed, harbored, transported, provided, or obtained a minor, knowing the minor would be caused to engage in commercial sex acts.

*Id.*

Warren also argues that he did not know that C.D. intended to engage in a commercial sex act. Taking the evidence in the light most favorable to the government, however, a reasonable jury could find that Warren had such knowledge. The evidence at trial established that Warren acted as a pimp for Latasha Duncan, C.D.'s older sister. Docket No. 118 at 15-19. On the afternoon of the offense, Duncan arranged to meet a customer at the Millenium Hotel in downtown Minneapolis. Docket No. 119 at 13-14. Warren gave Duncan a ride to the hotel. Docket No. 119 at 14-15. The customer — who, as it turned out, was an undercover police officer — asked for a younger girl. Docket No. 119 at 20-22. Duncan called her sister, C.D., and arranged for the two of them to meet the customer later that night. Docket No. 119 at 21-22.

The customer agreed to pay $900 for "full service" — that is, sexual intercourse — with both Duncan and her sister. Docket No. 119 at 22-23. Warren then picked up Duncan at the hotel. While they drove away from the hotel, Duncan explained to Warren that they had to pick up C.D. later that night because the customer wanted a younger girl and was going to pay $900. Docket No. 119 at 23, 25-26.

Later that night, Warren and Duncan drove to Apple Valley to pick up C.D. Docket No. 119 at 28. Before they arrived, Duncan spoke with C.D. on the phone. Docket No. 119 at 28-29. Although it is not clear exactly who said what, Duncan testified that the two of them agreed that C.D. would perform oral sex and that Duncan would do the rest. Docket No. 119 at 30. According to Duncan, C.D. said that she wanted $500; Warren told Duncan to tell C.D. that she could have $200 or $300. Docket No. 119 at 30-31. After picking up C.D., Warren drove Duncan and C.D. to the Millenium Hotel. Docket No. 119 at 31-32.

Warren focuses on C.D.'s testimony, which differed somewhat from Duncan's. Whereas Duncan testified that she and C.D. agreed on the phone that C.D. would perform oral sex, C.D. testified that, after Warren picked her up, Duncan told her (within earshot of Warren) that C.D. would give the man a "massage," Duncan would do "everything else," and if C.D. felt uncomfortable she could leave. Docket No. 120 at 70-71. C.D. understood that, as part of the "massage," she was supposed to touch the customer's penis and "get him hard." Docket No. 120 at 23-24.

Pointing to C.D.'s testimony, Warren argues that there is no evidence that he understood C.D.'s unstated definition of "massage" and that he had no other reason to know that C.D. intended to perform a sexual act, especially because C.D. had refused Warren's past attempts to

recruit her into prostitution. The Court disagrees. To begin with, on a motion for acquittal, the Court is required to view the evidence in the light most favorable to the government. Duncan testified that Warren overheard her phone conversation with C.D. and that, during that phone conversation, the two of them agreed that C.D would perform oral sex. Duncan further testified that Warren inserted himself into the conversation when it turned to money. The jury could have believed Duncan — and disregarded C.D.'s testimony to the extent that it conflicted with Duncan's — and reasonably inferred from Duncan's testimony that Warren understood that C.D. was going to perform oral sex for money. Moreover, even if the jury credited C.D.'s account over Duncan's, the jury could reasonably infer, based on Warren's knowledge that the customer wanted a younger girl and had agreed to pay nearly a thousand dollars (much more than he was willing to pay Duncan alone for sex), that Warren understood that C.D. would engage in some type of sexual conduct in exchange for money.

The Court therefore denies Warren's motion for acquittal.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for judgment of acquittal [Docket No. 116] is DENIED.

Dated: October 25, 2011

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge